UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BAILEY STOLER, AMY HESS and JESSICA
MARCUS, individually and on behalf of all others
similarly situated,

                Plaintiffs,

      -against-

INSTITUTE FOR INTEGRATIVE NUTRITION
and JOSHUA ROSENTHAL,

                Defendants.

---

13-cv-1275 (RWS)

---

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

---

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022
Tel:  212.583.9600

*Attorneys for Defendants*

**Of Counsel:**
   Andrew P. Marks

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT .................................................................................... 1

RELEVANT FACTUAL ALLEGATIONS ................................................................... 3

STANDARD OF REVIEW .......................................................................................... 5

ARGUMENT ................................................................................................................ 6

I.      THE COMPLAINT FAILS TO PLEAD VIABLE FMLA CLAIMS ............................. 6

        A.      FMLA Interference – The Third Cause of Action ................................. 6

                1.      Bailey Stoler ................................................................................ 6

                2.      Amy Hess ..................................................................................... 8

                3.      Jessica Marcus .......................................................................... 10

        B.      FMLA Retaliation – The Fourth Cause of Action .............................. 11

II.     THE COMPLAINT FAILS TO PLEAD RETALIATION UNDER TITLE VII
        OR THE NEW YORK CITY ADMINISTRATIVE CODE ........................................... 13

CONCLUSION ........................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)............................................................5, 10, 11

*Barkley v. Penn Yan Cent. Sch. Dist.,*
442 F. App'x 581 (2d Cir. 2011) .........................................13

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................5, 13

*Birkholz v. City of N.Y.,*
No. 10-cv-4719, 2012 U.S. Dist. Lexis 22445 (E.D.N.Y. 2012).............13

*Castro v. N.Y. City Bd. of Educ. Personnel Dir.,*
No. 96 Civ. 6314, 1998 U.S. Dist. Lexis 2863 (S.D.N.Y. Mar. 11, 1998) ...........15

*Cioinigel v. Deutsche Bank Ams. Holding Corp.,*
2013 U.S. Dist. Lexis 4689 (S.D.N.Y. 2013) .......................11

*Crisses v. Gucci Am., Inc.,*
No. 10-8393, 2012 U.S. Dist. Lexis 120164 (S.D.N.Y. Aug. 21, 2012) ...........8

*DiGiovanna v. Beth Israel Med. Ctr.,*
651 F. Supp. 2d 193 (S.D.N.Y. 2009)..................................8

*Dister v. The Cont'l Grp., Inc.,*
859 F.2d 1108 (2d Cir. 1988)..............................................9

*Germanos v. Columbia Univ.,*
322 F. Supp. 2d 420 (S.D.N.Y. 2004)..................................7, 9

*Higgins v. NYP Holdings, Inc.,*
836 F. Supp. 2d 182 (S.D.N.Y. 2011)..................................6

*Kurtzig v. Pulte Home Corp.,*
602 F.3d 1231 (11th Cir. 2010) ...........................................9

*LeClair v. Berkshire Union Free Sch. Dist.,*
No. 08-01354, 2010 U.S. Dist. Lexis 114835 (N.D.N.Y. Oct. 28, 2010)..........8

*Lightfoot v. Union Carbide Corp.,*
110 F.3d 898 (2d Cir. 1997)................................................9

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE(S)

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
   711 F.3d 106 (2d Cir. 2013)..................................................................................5, 13

*McDonnell Douglas Corp. v. Green*,
   511 U.S. 792 (1973)............................................................................................11

*Morris v. Schroder Capital Mgmt. Int'l*,
   481 F. 3d 86 (2d Cir. 2007)..................................................................................10

*Nagel v. Cnty. of Orange*,
   No. 09-cv-9960, 2013 U.S. Dist. Lexis 44990 (S.D.N.Y. Mar. 28, 2013) ...........12

*Pilgrim v. McGraw-Hill Cos. Inc.*,
   599 F. Supp. 2d 462 (S.D.N.Y. 2009)..................................................................13

*Potenza v. City of N.Y.*,
   365 F.3d 165 (2d Cir. 2004)..................................................................................6

*Ramsey v. City of N.Y.*,
   No. 06 Civ. 0173, 2009 U.S. Dist. Lexis 19562 (S.D.N.Y. Mar. 10, 2009) ...........15

*Reilly v. Revlon, Inc.,*
   620 F. Supp. 2d 524 (S.D.N.Y. 2009)..................................................................11

*Roberts v. Ground Handling, Inc.*,
   499 F. Supp. 2d 340 (S.D.N.Y. 2007)..................................................................7

*Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*,
   183 F.3d 155 (2d Cir. 1999)..................................................................................7

*Shamilov v. Human Res. Admin.*,
   No. 10-Civ-8745, 2011 U.S. Dist. Lexis 141014 (S.D.N.Y. Dec. 6, 2011)............14

*Slattery v. Swiss Re America, Corp.*,
   248 F. 3d 87 (2d Cir. 2001)..................................................................................15

*Starr v. Sony BMG Music Entm't*,
   592 F.3d 314 (2d Cir. 2010)..................................................................................12

*Swierkiewicz v. Sorema, N.A.*,
   534 U.S. 506 (2002)........................................................................................13, 14

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE(S)

*Tepperwien v. Entergy Nuclear Operations, Inc.,*
    663 F.3d 556 (2d Cir. 2011) ................................................................... 13

*University of Texas v. Nassar,*
    No. 12-848, 2013 U.S. LEXIS 4704 (June 24, 2013) ............................ 13

*Valtchev v. City of N.Y.,*
    400 F. App'x 586 (2d Cir. 2010) ........................................................... 13

*Vangas v. Montefiore Med. Ctr.,*
    No. 11-6722, 2013 U.S. Dist. Lexis 34304 (S.D.N.Y. Feb. 22, 2013) ..................... 7

*Yanklowski v. Brockport Cent. Sch. Dist.,*
    794 F. Supp. 2d 426 (W.D.N.Y. 2011) ..................................................... 8

**STATUTES**

29 U.S.C. § 2601 *et seq.* ........................................................................... 2

29 U.S.C. § 2611(2)(A) .............................................................................. 8

**RULES**

Fed. R. Civ. P. 12(b)(6) ......................................................................... 1, 5

Defendants Institute for Integrative Nutrition ("IIN") and Joshua Rosenthal ("Rosenthal") submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for partial dismissal of the complaint for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

IIN's workforce is predominantly comprised of young women.  In this action, three of those women claim that they were discriminated against because they were, or were about to become, mothers.  But "motherhood" itself, much less the narrower band of mothers of infants, is not a category protected by the anti-discrimination laws.  Companies must consider employees' work-family tradeoffs when deciding about employee assignments, just as they must consider potential retirements.  To plan for such potentialities is not unlawful; but failing to plan is unwise.

Because "motherhood" is not a protected category, plaintiffs try to shoehorn their claims into categories that Title VII of the Civil Rights Act and/or the New York City Administrative Code were drafted to protect, by attaching a hodgepodge of characteristics, such as "their status as married women, pregnant women, mothers or because they have, or will, take maternity leave" (Am. Cplt. ¶ 110), to perceived adverse employment actions.  For added leverage, plaintiffs purport to assert these claims not only for themselves, but on behalf of "all current or former female employees who worked at IIN during the past three years" (Am. Cplt. ¶ 111), without regard to whether those other employees ever conceived, or conceived of conceiving, a child, or had any complaint about their working conditions.[1]

---

[1]   Defendants will address the propriety of proceeding with this matter as a class action if and when plaintiffs seek certification.

Ironically, while purporting to represent "all female employees who worked at IIN," plaintiffs see discrimination in allegedly being supervised by a 24 year old, unmarried, childless female, or a 25 year old, married, childless female.  (Am. Cplt. ¶ 50).  Plaintiffs ignore conflicts inherent in their own position, e.g. Stoler and Hess were either engaged or married and of child bearing age when they were hired (Am. Cplt. ¶¶ 30, 68), or simply turn facts inside out.  For example, given its workforce demographic, IIN believed it warranted to explore how it could *retain* new mothers in the workforce.  One suggestion was on-site daycare.  As part of a feasibility study calculating the return on investment of such a benefit, IIN created a "maternity projection" chart, which plaintiffs make a cornerstone of their complaint. (Am. Cplt. ¶¶ 20-28) Although Stoler was involved with the project and aware of its intended beneficent purpose, the complaint implies an evil motive by alleging "[u]pon information and belief, IIN made employment decisions using the Maternity Projection chart."  (Am. Cplt. ¶ 27)  The actual facts fatally undermine plaintiffs' motherhood discrimination claims.

Perhaps recognizing the legal and factual deficiencies in their discrimination claims, plaintiffs purport also to bring this action "to remedy violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*" (Cplt. ¶ 2).  But the FMLA interference and retaliation claims are obvious throw-ins, and the complaint fails to clearly articulate such claims.  Indeed, plaintiff Stoler was allowed leave beyond the twelve weeks protected by the FMLA, Hess required no leave because her employment was terminated for cause before her leave date, and Marcus who was granted FMLA leave resigned before her leave expired.  The disparate circumstances and paltry allegations of the complaint fail to meet the pleading standards for an individual FMLA claim, let alone for a class action on behalf of all women.

## RELEVANT FACTUAL ALLEGATIONS[2]

This case is brought as a purported class action on behalf of women employed by IIN. (Am. Cplt. ¶ 1)  IIN is a health coaching and nutritional education school, with a principal place of business in New York City. (Am. Cplt. ¶ 12)  IIN's mission is to play a crucial role in improving health and happiness, and through that process, create a ripple effect that transforms the world.  Joshua Rosenthal is IIN's founder and director.  (Am. Cplt. ¶ 13)

Plaintiffs are three women who performed various duties at IIN during brief periods of employment.  Each became pregnant and requested FMLA leave.

Bailey Stoler began working for IIN on February 24, 2010.  (Am. Cplt. ¶ 30).  At that time, she was engaged to be married.  In November 2011, Stoler informed IIN that she was pregnant (Am. Cplt. ¶ 34), and in February 2012, she submitted a request for FMLA leave (Am. Cplt. ¶ 36).  Plaintiff Stoler was granted leave of approximately five months and eventually returned to work in a position reporting directly to Rosenthal with no reduction in pay or benefits.  (Am. Cplt. ¶ 44)  Although upon her return on September 25, 2012, Stoler was assigned a cubicle rather than a private office, she was promptly reassigned after complaining that she "felt demoted" and needed a private office to express breast milk.  (Am. Cplt. ¶ 48)  On May 14, more than seven months after she returned to work, Stoler was one of seventeen employees laid off as part of a reduction in force.  (Am. Cplt. ¶¶ 63-64)  Stoler was offered a different position at IIN at a reduced salary, but she thought it was a "junior" position and she declined.  (Am. Cplt. ¶¶ 64-66)

Amy Hess was hired at IIN on November 16, 2011.  (Am. Cplt. ¶ 68).  At that time, she was married without children, but before her one year anniversary of employment, she had

---

[2]  For purposes of this motion only, Defendants will accept the factual allegations of the complaint as true.

become pregnant.  On October 9, 2012, Hess advised IIN that she was pregnant and would need to take an FMLA leave from February 2013 to May 2013.  (Am. Cplt. ¶ 69)  Although she was not then eligible for FMLA leave as she had not worked at IIN for one year, IIN did not reject her request.  However, some five months later, before her FMLA leave was to commence, Hess was discharged from employment because she interfered with an article about IIN that was posted on Forbes on-line and tried to avoid responsibility by lying in response to management's inquiry.  Although the complaint contains the conclusion that "this was not the actual or complete reason" for her termination (Am. Cplt. ¶ 84), Hess does not deny her involvement or the cover up.  Nor does the complaint allege that Hess was terminated to deprive her of an FMLA leave.

Jessica Marcus commenced employment with IIN in April 2011. (Am. Cplt. ¶ 89)  In September 2011, Marcus became engaged to be married (Am. Cplt. ¶ 91), and on August 13, 2012 Marcus informed IIN that she was pregnant.  (Am. Cplt. ¶ 98)  Marcus began an FMLA leave on March 6, 2013 (Am. Cplt. ¶ 108), immediately following two weeks of vacation. Marcus's leave was to expire on May 29, but she did not seek to return to work.  Instead, on May 14, Marcus sent an email to IIN resigning from her position.  (Am. Cplt. ¶ 109).

The complaint purports to assert claims on behalf of each plaintiff individually and on behalf of a class of all women employed by IIN in the past three years for discrimination and retaliation against IIN under Title VII (First and Second Causes of Action), interference and retaliation in violation of the FMLA against IIN and Rosenthal (Third and Fourth Causes of Action), and discrimination and retaliation in violation of the New York City Human Rights Law against IIN and Rosenthal (Fifth and Sixth Causes of Action).  Defendants move to dismiss the

Second, Third, Fourth and Sixth causes of action for failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted.  Although a complaint need not include "detailed factual allegations," a plaintiff must do more than put forth "labels and conclusions."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must plead facts sufficient "to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  This standard, which was intended to protect defendants from burdensome discovery in potentially baseless claims, has even greater applicability to wide-ranging class actions.

Examining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint fails to state a claim.  *Id.*  In short, the plaintiff's factual allegations, must show that the plaintiff's claim is "plausible," not merely "conceivable." *Id.* at 680.  Pleadings that are no more than "legal conclusions," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot defeat a motion to dismiss.  *Id.* at 678; *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 113 (2d Cir. 2013)("Pleadings that are no more than conclusions are not entitled to the assumption of truth.").

## ARGUMENT

## I.

## THE COMPLAINT FAILS TO PLEAD VIABLE FMLA CLAIMS

In connection with a serious health condition or the birth or adoption of a child, the FMLA provides eligible employees with up to twelve weeks unpaid leave from work and reinstatement to an equivalent position at the expiration of such leave. The Second Circuit has recognized two distinct causes of action for violation of the FMLA: nterference claims and retaliation claims. *Potenza v. City of N.Y.*, 365 F.3d 165, 167-68 (2d Cir. 2004).

### A.   FMLA Interference – The Third Cause of Action

To state an FMLA interference claim, a plaintiff must show that: (1) she is an 'eligible employee' under the FMLA (e.g., has sufficient length of service, hours of work); (2) the employer is covered by the FMLA (e.g., more than 50 employees); (3) she was entitled to leave (e.g., qualifying condition); (4) she gave notice of intention to take leave; and (5) she was denied benefits under the FMLA. *See Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 193 (S.D.N.Y. 2011). The complaint fails to allege facts establishing an interference claim for any of the plaintiffs.

#### 1.   Bailey Stoler

With respect to interference with Stoler's FMLA rights, the amended complaint alleges:

- "In November 2011, Stoler told Rosenthal that she ... intended to take maternity leave beginning May 2012." (Am. Cplt. ¶ 34)

- "In February, 2012, Stoler submitted paperwork related to her requested FMLA leave." (Am. Cplt. ¶ 36)

- "Stoler began her FMLA leave on May 7, 2012." (Am. Cplt. ¶ 37)

- "[I]nitially Stoler's leave was scheduled to last until September 10, 2012; however due to an issue with childcare, Stoler asked Rosenthal for a two-week extension of her leave". (Am. Cplt. ¶ 39)

- "Stoler resumed work full time on September 25, 2012.   (Am. Cplt. ¶ 44)

Stoler contends that she was not reinstated to an equivalent position upon returning to work from her *maternity leave*.  (Am. Cplt. ¶¶ 38, 42)  Defendants deny that contention, but assuming it was true, it fails to state an FMLA interference claim.

Failure to reinstate an employee to a prior position or its equivalent following FMLA leave is an interference claim.  *Roberts v. Ground Handling, Inc.*, 499 F. Supp. 2d 340, 355 (S.D.N.Y. 2007).   But *maternity leave* is not synonymous with FMLA leave.  Stoler's FMLA leave began on May 7 and expired twelve weeks later on July 30, 2012.   Stoler's FMLA reinstatement right expired with the expiration of her FMLA leave.   Therefore, assuming *arguendo* that Stoler's position when she resumed working on September 25, 2012 – nearly three months after her FMLA protected leave expired – was not equivalent to the position she held the prior May, her claim is not cognizable as FMLA interference because she was not denied any benefits granted by the FMLA.  *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161-62 (2d Cir. 1999) (defendant did not interfere with plaintiff's FMLA rights where plaintiff did not return to work before the end of his FMLA leave); *Vangas v. Montefiore Med. Ctr.*, No. 11-6722, 2013 U.S. Dist. Lexis 34304 at *6 (S.D.N.Y. Feb. 22, 2013)(an employee who does not return to work after 12 weeks of protected leave has received all the benefits to which they are entitled and fails to state a claim for FMLA interference); *Germanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004) ("Plaintiff received over twelve weeks of paid leave from Columbia, and plaintiff had no right to reinstatement because she was incapable of performing the essential functions of her position at the end of the twelve weeks."). Accordingly, Stoler fails to state an FMLA interference claim.

### 2.    Amy Hess

With respect to interference with Hess's FMLA rights, the amended complaint alleges:

- "Hess began working at IIN on or about November 16, 2011 …."  (Am. Cplt. ¶ 68)

- "On October 9, 2012, Hess sent Rosenthal an email telling him that she was pregnant and would need to take FMLA leave from February 2013 to May 2013." (Am. Cplt. ¶ 69)

- "On February 8, 2013 – ten days before the start of Hess's maternity leave – defendants terminated her employment.  Defendants' stated reason for firing Hess was that she had made misrepresentations to the Company; in fact, this was not the actual or complete reason.  Defendants fired Hess because of discrimination and retaliation.  (Am. Cplt. ¶ 84)

To be eligible for FMLA leave, an employee must have worked for an employer for twelve months.  29 U.S.C. § 2611(2)(A).  At the time Hess notified IIN of a need for FMLA leave, she had not been employed for one year and, therefore, was not eligible for FMLA leave. Hess continued to work for IIN past her one year anniversary date and, therefore, her eligibility to qualify for FMLA benefits was not interfered with.

Ultimately, Hess was discharged before her FMLA leave commenced.  Termination from employment because an employee intended to take an FMLA leave is generally treated as FMLA retaliation.[3]  Some district courts have found that termination also can give rise to an FMLA interference claim.  *See, e.g. Crisses v. Gucci Am., Inc.,* No. 10-8393, 2012 U.S. Dist. Lexis 120164 at *35 (S.D.N.Y. Aug. 21, 2012) (Defendant may not terminate Plaintiff to deny her benefits she was otherwise entitled to under the FMLA.)  Of course, the FMLA does not guarantee continued employment, and every termination necessarily leads to the denial of future

---

[3]   See, e.g., *Yanklowski v. Brockport Cent. Sch. Dist.*, 794 F. Supp. 2d 426, 428 (W.D.N.Y. 2011) (Dismissing FMLA interference claim based on discharge because while plaintiff was "fired, allegedly for exercising her rights under the FMLA, courts in this circuit have consistently held that these types of claims constitute retaliation and not interference."); *LeClair v. Berkshire Union Free Sch. Dist.*, No. 08-01354, 2010 U.S. Dist. Lexis 114835 at *15 (N.D.N.Y. Oct. 28, 2010) ("Plaintiff's theory of interference by termination is merely a retaliation theory in disguise."); *DiGiovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 203 (S.D.N.Y. 2009) (plaintiff's interference claim "really is no more than an effort to dress [his] retaliation claim in (barely) different clothing").

FMLA leave. *See, e.g., Kurtzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010)("the FMLA right to non-interference with the commencement of leave is not absolute, and if a dismissal would have occurred regardless of the request for FMLA leave, an employee may be dismissed preventing her from exercising her right to leave or reinstatement"); *Germanos*, 322 F. Supp. 2d at 428 ("The law is clear that an employee may be terminated while on medical leave, as long as the taking of the FMLA leave was not the cause for the termination."). For this reason, the complaint must set forth facts from which it can be inferred that the discharge occurred to prevent the exercise of FMLA rights. This is the required showing for an interference claim under the Employee Retirement Income Security Act. *See, e.g., Dister v. The Cont'l Grp., Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988)("no ERISA cause of action lies where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment."); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)("[Plaintiff] argues on appeal, that pre-termination discrimination against him 'must' have resulted from [defendant's] desire to interfere with his pension benefits because it had that effect. This is a textbook illustration of the *post hoc ergo propter hoc* fallacy."). The same rationale applies to FMLA discharge interference claim, and no cause of action is stated where the loss of FMLA leave was a mere consequence of, rather than a motivating factor for, the termination of employment.

The instant complaint contains no facts tying Hess's anticipated FMLA leave to her termination. While Hess alleges that Rosenthal commented to her that "he had 'never met a new mom that didn't underestimate the sleep, time, exhaustion from a new baby'" and "with Hess having a baby, [he] needed to 'protect' himself and the Company because her performance could decline" (Am. Cplt. ¶ 70), there are no comments attributed to Rosenthal or anyone else about

the FMLA or leave from work.  Indeed, paragraph 84 of the amended complaint specifically alleges that "Defendants fired Hess because of discrimination" (*i.e.*, the First and Fifth Causes of Action), and "retaliation," (*i.e.*, the Second, Fourth and Sixth Causes of Action).  Without any facts from which it may be fairly inferred that Hess was terminated to avoid giving her an FMLA leave, the complaint contains nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" that fails to state a claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Accordingly, Hess's Third Cause of Action should be dismissed.

### 3.    Jessica Marcus

With respect to interference with Marcus's FMLA rights, the amended complaint alleges:

- "On August 13, 2012, Marcus sent Rosenthal an email informing him that she was pregnant." (Am. Cplt. ¶ 98)

- "In early March 2013, Marcus began her FMLA leave." (Am. Cplt. ¶ 108)

On May 14, Marcus resigned from employment during her FMLA leave and did not seek to return to work.  Accordingly, she has not identified any FMLA right that she was denied, and the complaint fails to state an FMLA interference claim.

Marcus's allegation that she was "constructively discharged" (Am. Cplt. ¶ 109) does not save her FMLA interference claim from dismissal.  Our research has found no case applying constructive discharge where a new mother decides not to return at the conclusion of her FMLA leave because of alleged pre-leave discrimination.  This is not surprising because, as discussed above regarding Hess, a discharge from employment – actual or constructive – is analyzed as a retaliation claim, rather than an interference claim.  Furthermore, to establish a constructive discharge, Marcus must identify facts establishing that IIN deliberately made her working conditions so intolerable that a reasonable person in her shoes would have felt compelled to resign. *Morris v. Schroder Capital Mgmt. Int'l*, 481 F. 3d 86, 89 (2d Cir. 2007).  IIN's alleged

removal of certain duties nine months earlier (Am. Cplt. ¶ 104), and an increase in compensation to $75,000 rather than a promised $100,000 (Am. Cplt. ¶ 105), are hardly the objectively intolerable conditions" contemplated by the constructive discharge theory.  Notably, Marcus did not feel compelled to resign when these alleged offenses occurred (nor did Stoler or Hess who allegedly endured similar conditions).  And Marcus had not even been exposed to the alleged intolerable conditions since February 21, 2012 – nearly three full months when she chose to submit her resignation.

Finally, even if it were fair to presume that Stoler and Hess were exceptions, and a reasonable person in Marcus's shoes would have resigned, Marcus must show that IIN created intolerable conditions for the purpose of interfering with her FMLA rights.[4]  Such an inference cannot possibly be drawn from the factual allegations of the complaint.  Where, as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Iqbal,* 556 U.S. at 679.  Accordingly, Marcus fails to state an FMLA interference claim.

**B.     FMLA Retaliation – The Fourth Cause of Action**

FMLA Retaliation claims are analyzed under the *McDonnell Douglas Corp. v. Green,* 511 U.S. 792 (1973) burden-shifting frame work. To establish a prima facie claim for retaliation a Plaintiff must show that "(1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Reilly v. Revlon, Inc.,* 620 F. Supp. 2d 524, 537–38 (S.D.N.Y. 2009)(citing *Potenza,* 365

---

[4] *Cf., Cioinigel v. Deutsche Bank Ams. Holding Corp.*, 2013 U.S. Dist. Lexis 4689 at *8 (S.D.N.Y. 2013) (Employee asserting constructive discharge in support of an ERISA interference claim "only states a claim under section 510 if he alleges that defendant interfered with his employment relationship with the intent of preventing him from obtaining his severance benefits (or otherwise interfering with his rights under ERISA.")

F.3d at 168).  "If the plaintiff establishes a *prima facie* case, there is a presumption of retaliation, and the burden shifts to the defendant to provide a legitimate nondiscriminatory reason for the termination.  If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered legitimate reason for her termination was pretextual."  *Nagel v. Cnty. of Orange*, No. 09-cv-9960, 2013 U.S. Dist. Lexis 44990 at *9 (S.D.N.Y. Mar. 28, 2013) (citation omitted).

Plaintiffs' Fourth Cause of Action contains the conclusory statement that "[b]y the acts and practices described above, defendants retaliated against plaintiffs and Class Members for exercising their rights under the FMLA" (Am. Cplt. ¶ 137).  But the retaliatory acts and practices to which plaintiffs refer are neither identified nor apparent from the factual allegations of the complaint.  Nowhere do plaintiffs identify facts connecting their FMLA leave to an adverse employment action.[5]  In fact, the inference to be drawn from the complaint is that adverse employment actions were taken for other reasons – *i.e.*, motherhood.  Comments allegedly made by Rosenthal that "he had 'never met a new mom that didn't underestimate the sleep, time, exhaustion from a new baby'" and "with Hess having a baby, [he] needed to 'protect' himself and the Company because her performance could decline" (Am. Cplt. ¶ 70), do not refer to FMLA rights or leave from work.  Indeed, the essential premise of plaintiffs' action is that defendants discriminate against mothers of young children which, it is alleged, begins when women get married (Am. Cplt. ¶ 3) – which is years before they conceive of taking FMLA leave and completely unrelated to whether the employee is even FMLA eligible.

---

[5]  The allegation that defendants "retaliate against ... employees from the moment they announce their pregnancy and their intention to exercise their rights under the FMLA" (Am. Cplt. ¶ 3) is a legal conclusions, not facts sufficient to defeat a motion to dismiss.  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)(on motion to dismiss, court accepts all factual allegations as true, but gives no effect to legal conclusions couched as factual allegations).

For a complaint to be sufficient, the claim asserted must be one that, in light of the factual allegations, is at least "plausible." To present a plausible claim, the "pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). It must allege facts that would be sufficient to permit a reasonable inference that the defendant has engaged in culpable conduct. Plaintiffs' FMLA claims here are an obvious afterthought, supported only by conclusions parroting statutory requirements. Plaintiffs' complaint provides nothing more than "low-octane fuel for speculation," *Lundy*, 711 F.3d at 115, and should be dismissed for failure to allege a plausible FMLA interference or retaliation claim.

## II.

### THE COMPLAINT FAILS TO PLEAD RETALIATION UNDER TITLE VII OR THE NEW YORK CITY ADMINISTRATIVE CODE

To establish a prima facie case of retaliation, each plaintiff must demonstrate that: (1) she engaged in protected activity; (2) the defendant knew that she engaged in such activity; (3) she was subjected to an adverse employment action; and (4) the adverse employment action would not have been taken "but for" the protected activity. *University of Texas v. Nassar*, No. 12-848, 2013 U.S. LEXIS 4704, at * 42 (June 24, 2013); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 n. 6 (2d Cir. 2011); *Barkley v. Penn Yan Cent. Sch. Dist.*, 442 F. App'x 581, 583 (2d Cir. 2011); *Valtchev v. City of N.Y.*, 400 F. App'x 586, 590 (2d Cir. 2010); *Pilgrim v. McGraw-Hill Cos. Inc.*, 599 F. Supp. 2d 462, 469 (S.D.N.Y. 2009).[6] Although the prima facie case is an evidentiary standard and not a pleading requirement, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002), to defeat a motion to dismiss under Rule 12(b)(6), the retaliation claim

---

[6] *Birkholz v. City of N.Y.*, No. 10-cv-4719, 2012 U.S. Dist. Lexis 22445 at *40 (E.D.N.Y. 2012) (New York City law "is slightly more solicitous of retaliation claims than federal and state law because, rather than requiring a plaintiff to show an 'adverse employment action,' it only requires him to show that something happened that was 'reasonably likely to deter a person from engaging in protected activity.'")

of each plaintiff must be facially plausible under *Iqbal* and *Twombly*, and the complaint must give defendants fair notice of the claim and the grounds upon which it rests. *Swierkiewicz*, 534 U.S. at 512; *see also Shamilov v. Human Res. Admin.*, No. 10-Civ-8745, 2011 U.S. Dist. Lexis 141014, at *4 (S.D.N.Y. Dec. 6, 2011) ("to overcome a Rule 12(b)(6) motion to dismiss in an employment discrimination case, a complaint must give fair notice of the basis of plaintiff's claims and the claims themselves must be facially plausible"). The complaint fails to state a claim of retaliation under federal or state law because there is no allegation that plaintiff engaged in protected activity and/or because it is not facially plausible that the discriminatory conduct that allegedly began when plaintiffs became pregnant (or earlier) is causally connected to any protected activity.

Hess alleges that she informed Rosenthal of her pregnancy on October 9, 2012 and two weeks later he began to question her commitment and ability. (Am. Cplt. ¶¶ 69-70) Thereafter, defendants "looked for a reason to terminate Hess's employment and she was terminated on February 8, 2013. (Am. Cplt. ¶¶ 72, 84). Plaintiffs commenced this action on February 25, 2013 and filed an EEOC charge on April 5, 1013. The complaint contains no factual allegation that prior to her termination Hess made a complaint of discrimination or opposed any conduct that she reasonably believed in good faith to violate federal or city law. Because she does not allege that she engaged in protected activity, she fails to state a claim of retaliation.

Marcus quit her position with IIN in May 2013, several months after filing her EEOC charge and complaint. While such filing is obviously protected activity, nothing happened to Marcus after the filing that was reasonably likely to deter a person from engaging in protected activity. Indeed, Marcus was out of work from and after February 21 – four days before the complaint was filed.

Unlike Marcus and Hess, Stoler remained actively employed after the commencement of the action and, therefore, comes closer to pleading a retaliation claim.  However, the complaint makes clear that Stoler believed she was being mistreated since September 25, 2012, the day she returned to work following her maternity leave.  Nothing in the complaint suggests that Stoler's treatment changed after the complaint was filed, or otherwise connects that treatment to the filing of the complaint or her EEOC charge.   Where, after an employee files a complaint of discrimination, an employer merely continues to engage in the same conduct that the plaintiff contends is discriminatory, the "causation" element necessary to plead retaliation is lacking.  *See, e.g.*, *Slattery v. Swiss Re America, Corp.*, 248 F. 3d 87, 95 (2d Cir. 2001)("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); *Ramsey v. City of N.Y.*, No. 06 Civ. 0173, 2009 U.S. Dist. Lexis 19562, at *29 (S.D.N.Y. Mar. 10, 2009) ("[a]n inference of retaliation does not arise when a plaintiff has been subject to a series of adverse employment actions that began before the plaintiff engaged in the protected conduct."); *Castro v. N.Y. City Bd. of Educ. Personnel Dir.,* No. 96 Civ. 6314, 1998 U.S. Dist. Lexis 2863, at *22 (S.D.N.Y.  Mar. 11, 1998) ("It is unreasonable to infer that the continuation of behavior that had preceded the filing of the plaintiff's complaint was somehow motivated by that complaint.")

## CONCLUSION

For the reasons discussed herein, Defendants' Motion to Dismiss the Second, Third, Fourth and Sixth Causes of Action should be granted.


Dated: June 24, 2013
       New York, New York

                                            /s Andrew P. Marks
                                        Andrew P. Marks (amarks@littler.com)
                                        LITTLER MENDELSON
                                          A Professional Corporation
                                        900 Third Avenue
                                        New York, New York  10022.3298
                                        Tel:  212.583.9600

                                        *Attorneys for Defendants*